*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 12-93049-E-11 |
| | Docket Control No. SDN-4 |
| MARK ANTHONY GARCIA and | |
| ANGELA MARIE GARCIA, | |
| Debtors. | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

## MEMORANDUM OPINION AND DECISION

YP ADVERTISING & PUBLISHING LLC, a Delaware limited liability company, formerly known as YP WESTERN DIRECTORY, LLC, a Delaware limited liability company, formerly known as PACIFIC BELL DIRECTORY, a California corporation ("Creditor YP"), that has been identified as the Chapter 11 Plan Proponent in this case, files this motion ("Motion") for allowance of an administrative expense for the legal fees and expenses incurred in making a substantial contribution to this Chapter 11 case.[1] For all relevant periods of time Creditor YP has been represented by Coleman & Horowitt, LLP ("YP Counsel"). The time period for which the fees are requested is October 24, 2014, through July 29, 2016. Creditor YP requests the administrative

---

[1] This motion was filed, served, and noticed as required pursuant to Local Bankruptcy Rule 9014-1(f)(1). The defaults of all non-responding parties in interest are entered.

expense for $45,805.00 in fees and costs in the amount of $1,280.39, for a total of $47,085.39.[2]

In addition to Creditor YP and YP Counsel, the main players in the prosecution of this case relevant to the current Motion are Mark Garcia and Angela Garcia, the two debtors ("Debtor"); Mark Hannon, Esq., who served as counsel for the two debtors when they served as the debtor in possession prior to the appointment of the Chapter 11 Trustee ("Debtor's Counsel"); John Bell, the Chapter 11 Trustee ("Chapter 11 Trustee"); Zayante P. Merrill, the first attorney for the Chapter 11 Trustee; and Estella Pino, the second attorney for the Chapter 11 Trustee (collectively "Trustee Counsel").

The court grants the Motion, allowing $25,375.00 in legal fees and $1,061.19 in costs relating thereto. Requests for amounts in excess thereof are denied.

In considering this Motion and the underlying facts, the court is convinced that YP Counsel, given her good nature and lack of bankruptcy law experience (though not inexperienced as a lawyer), was actively taken advantage of by Debtor and Debtor's Counsel, and at least passively by the Chapter 11 Trustee and Trustee Counsel. Recently, the court was presented with a declaration under penalty of perjury signed by debtor Mark Garcia, the Plan Administrator under the confirmed Chapter 11 Plan. Mr. Garcia was testifying under penalty of perjury as to facts in support of a

---

[2] As disclosed at the hearing, notwithstanding the language in the Motion, it may be only the law firm identifying itself as representing Creditor YP seeking allowance of an administrative expense for attorneys' fees. It was disclosed at the hearing that Creditor YP never incurred any obligation to pay its lawyer for the legal services provided for Creditor YP in this case for which the administrative expense is requested.

Some bankruptcy courts have concluded that it is theoretically possible for a creditor's attorney to seek the allowance of an administrative expense for fees pursuant to 11 U.S.C. § 503(b)(4) and (b)(3)(D), notwithstanding the creditor client having no obligation to pay such fees. As shown in this case, allowing an attorney to request an administrative expense for fees, without the client creditor's rational financial governor guarding the litigation vigor of the attorney, raises significant issues and problems.

Though, based on the pleadings, the court makes reference in this Ruling to Creditor YP filing the Motion and seeking allowance of an administrative expense as a creditor under 11 U.S.C. § 503(b)(4) through § 503(b)(3)(D), the court makes no findings that Creditor YP has actually been involved in these proceedings or that Creditor YP has been actively involved with YP Counsel for the actions taken by YP Counsel in this case.

motion to sell property under the plan to an "unrelated" third-party.  The declaration that was prepared by Debtor's Counsel, who is now serving as the attorney for the Debtor serving in the capacity of Plan Administrator, contained false information (inaccurately stating that Debtor had no interest in the "unrelated" third-party purchaser limited liability company, an entity for which debtor Mark Garcia is actually a managing member).  The court did not find persuasive debtor Mark Garcia's and Debtor's Counsel's arguments that Mr. Garcia just did not read the declaration before signing it and the court should overlook the false statement.  Civil Minutes, Dckt. 896.  This misstatement exemplifies the conduct of Debtor in this case, all the while represented by the same Debtor's Counsel.

The amount of attorneys' fees allowed Creditor YP for the work of YP Counsel is greater than stated in the tentative ruling before the court took this matter under submission.  Though the court's discussion in the findings of fact regarding YP Counsel are pointed, the real blame for the non-productive legal services rests at the feet of the Debtor, Debtor's Counsel, the Chapter 11 Trustee, and Trustee Counsel.  Upon further review of the facts, and conduct of the other parties and attorneys, the court has concluded that a higher amount of reasonable attorneys' fees than stated in the tentative ruling are appropriate for YP Counsel – one attorney in this case who attempted to do her job in this case consistent with her obligations in federal court.

**REVIEW OF MOTION, RESPONSES, AND
ADDITIONAL INFORMATION PRESENTED AT THE HEARING**

**Motion for Allowance of Administrative Expense for Creditor Attorneys' Fees**

As with any request for an order, the court begins with the Motion itself, which must state with particularity not only the relief requested, but the grounds upon which such relief is based. Fed. R. Bankr. P. 9013, 9014.  It is asserted that due to the efforts of Creditor YP's counsel, the case was saved from a conversion to Chapter 7 in which the creditors would have recovered nothing.

The grounds stated with particularity in the Motion are summarized as follows:

A.    Neither the Debtors nor the Chapter 11 Trustee possessed the ability to prosecute a plan in this bankruptcy case.

B.    To prevent a conversion to Chapter 7, Creditor YP had its counsel prepare and file a disclosure statement and plan.

C.   The disclosure statement was approved and the plan ultimately confirmed on May 6, 2016.

D.   The Chapter 11 Plan provides for a 50% payout to creditors holding general unsecured claims.

E.   The following legal services were provided by YP Counsel to Creditor YP for which an administrative expense is sought:

1.   Drafting disclosure statement, plan and exhibits.

2.   Communicating with Debtor's attorney regarding the plan, disclosure statement, and payment of secured claims.

3.   Communicating with the Trustee's attorney regarding the disclosure statement and plan.

4.   Communicating with other creditor attorneys concerning the proposed plan and disclosure statement.

5.   Attending status conferences and confirmation hearings.

6.   Reviewing Monthly Operating Reports in conjunction with drafting the disclosure statement and plan.

7.   Preparing and filing this application for an administrative expense for the attorneys' fees and costs.

F.   The reasonable and necessary fees are in the amount of $45,805.00.

G.   The reasonable and necessary costs are in the amount of $1,280.39.

Motion, Dckt. 843.

The task billing analysis provided in the Motion discloses that the fees are allocated as follows:

| Task Billing Area of Service | Hours Billed for Which Administrative Expense Requested | Hourly Rate | Total Dollar Amount of Attorneys' Fees or Costs |
|---|---|---|---|
| Hours re Disclosure Statement and Plan | 136.42 | $250 | $34,105.00 |
| Hours re Macdonald Litigation | 17.45 | $250 | $4,362.50 |
| Hours re USFI & G Street | 21.45 | $250 | $5,362.50 |
| Hours re Deutsche Bank | 7.90 | $250 | $1,975.00 |
| House re Legal Research and Conference for Same | 79.60 | $250 | $19,900.00 |
| | | | |

4

| Total Hours Reported to Have Been Expended by YP Counsel and Fees Incurred by Creditor YP | 262.82 | | $65,705.00 |
|---|---|---|---|
| | | | |
| Portion of Above Legal Expense for Which Creditor YP Does Not Seek an Administrative Expense | Legal Research | | ($19,900.00) |
| | | | |
| Total Legal Fees Creditor YP Requests as Administrative Expense | | | $45,805.00 |

YP Counsel who has been appearing in this case for Creditor YP has provided her declaration in support of the Motion for Creditor YP to be allowed an administrative expense. Declaration, Dckt. 845. Her declaration gets off on the wrong foot, conflicting with the Motion and stating under penalty of perjury that it is her law firm that is seeking compensation and reimbursement of expenses, not the allowance of an administrative expense. Declaration ¶ 4, *Id.* It is this type of lack of basic bankruptcy law experience that has led to YP Counsel being taken advantage of by the bankruptcy-experienced parties and their counsel.

**U.S. Trustee Response and Assertion of Plan Terms**

The United States Trustee for Region 17 filed a Response on October 6, 2016. Dckt. 862. The U.S. Trustee states that while Creditor YP did make a substantial contribution to this case by obtaining approval of a Disclosure Statement and confirmation of the Chapter 11 Plan, Creditor YP expressly states in the Disclosure Statement (Dckt. 739), purportedly prepared by Creditor YP that, "[Creditor YP] estimates filing a claim for fees in the sum of $15,000." This Disclosure Statement appears to be a cleaned-up version of the original Disclosure Statement filed on December 3, 2015. Dckt. 704. The U.S. Trustee states that a fee reduction may be appropriate to the extent the increased fees detrimentally affect the feasibility of the Plan.

**Reply Filed for Creditor YP**

Creditor YP filed a Reply to the Response of the United States Trustee on October 13, 2016. Dckt. 866. Creditor YP states that the amount allocated for attorneys' fees was only $15,000.00

because that is all the Debtor could afford to pay based on the income, expense, and other administrative expenses Creditor YP and YP Counsel agreed to be paid to Debtor's Counsel and the Chapter 11 Trustee's two attorneys ahead of Creditor YP. YP Counsel confirms that the $15,000.00 administrative expense amount was not stated because Creditor YP was unaware of the actual fees and costs. It is argued that if the full amount of the projected fees had been listed in the Plan and Disclosure Statement, then the Plan would not have been feasible and confirmation would have been denied. As repeated at the hearing, YP Counsel argues that it agreed to take a substantial discount on its fees (not trying to recover 67% of the amount now asserted "reasonable and necessary") so that Debtor's Counsel and Trustee Counsel (who were incapable of prosecuting this case and getting a plan confirmed as asserted in the present Motion) could be paid in full for their fees.

Creditor YP is requesting that: (1) the administrative expense for attorneys' fees that Debtor's Counsel is not legally allowed to be paid as an administrative expense, and (2) attorneys' fees not requested by or awarded to the Trustee's first attorney stated in the Disclosure Statement and Plan be reallocated to Creditor YP for the benefit of YP Counsel. Creditor YP asserts that reallocating monies for the not-allowed administrative expenses to YP Counsel will not have any adverse effect on any creditor or Debtor.

**Additional Information Provided by YP Counsel at the October 20, 2016 Hearing**

At the hearing, YP Counsel engaged in a frank, honest discussion with the court. While the court acknowledges YP Counsel's candor and professional interaction with the court and other counsel at the hearing, the information provided amplifies the court's above conclusions and concerns regarding YP Counsel's conduct, as well as the conduct of Debtor's Counsel and Trustee Counsel. At the hearing, the attorney from YP Counsel stated that she was not experienced in bankruptcy and out of her depth. She also stated that she relied on information from Debtor's Counsel and Trustee Counsel as what could and could not be done under the Bankruptcy Code in this case, in addition to her own research.

At the hearing, YP Counsel further reaffirmed that she agreed to discount her fees because Debtor's Counsel and Trustee Counsel demanded payment of 100% of their fees. In addition to

6

further demonstrating YP Counsel's bankruptcy legal naïveté, it also demonstrates the lack of professionalism and good faith conduct by Debtor and Debtor's Counsel, and the lack of a moderating influence and demonstrating professionalism in federal court by the Trustee and Trustee Counsel.[3] They took advantage of YP Counsel's good nature (and lack of a client who was actually paying the bill) and sought to have YP Counsel work for free to advance the improper and incomplete disclosure statements and plans. No knowledgeable bankruptcy attorney would ever give away his or her services to allow other parties and attorneys to make money (get paid 100% on their fees while taking a 67% discount on his or her own fees). YP Counsel, unadvisedly relying on the direction from Debtor's Counsel and the apparent acquiescence of the Trustee and Trustee Counsel, was led down a path of non-productive, non-compensable legal work.

As stated at the hearing, it is a sad, expensive (if YP Counsel turned down other paying legal work to do the Debtor's bidding) lesson YP Counsel has been taught by the other parties and attorneys in this case.

## STATUTORY BASIS FOR ADMINISTRATIVE EXPENSE FOR A CREDITOR'S ATTORNEYS' FEES

Though stated as a motion for "First and Final Application for Compensation" (in the manner of requesting attorneys' fees authorized for employment pursuant to 11 U.S.C. §§ 327, 330), the attorney for a creditor is not a party entitled to be paid an administrative expense for compensation pursuant to those Bankruptcy Code sections. In the Motion, Creditor YP and YP Counsel affirmatively state with particularity that the legal basis for being allowed an administrative expense

---

[3] This court notes that historically attorneys appearing in the bankruptcy court in the Eastern District of California demonstrate a high degree of professionalism in their practices. The attorneys respect the certifications arising under Federal Rule of Civil Procedure 11 and Federal Rule of Bankruptcy Procedure 9011, with there being little "Yes He Did, No I Didn't Violate" these Rules in this District. Unfortunately, the required certifications made under Federal Rule of Bankruptcy Procedure 9011 took a back seat to some of the parties and attorneys seeing how much they could get away with in this case, and taking advantage of YP Counsel's admitted lack of knowledge and experience in matters arising under the Bankruptcy Code–including the complex issues that may arise in a Chapter 11 case. This is unfortunate, putting a blemish on the bankruptcy attorneys' in general collective record for professionalism in this District.

is:

> Title 11 U.S.C.A. §503(b)(3)(D), provides that **a creditor** that provides a substantial contribution in a case under chapter 9 or 11 **may be** compensated and **reimbursed actual and necessary expenses**.

Motion, p. 2:13–15; Dckt. 843 (emphasis added).  A review of 11 U.S.C. § 503(b)(3)(D) shows that

it specifically excludes any professional fees to be allowed as an administrative expense.

> (b) After notice and a hearing, there **shall be allowed, administrative expenses**, other than claims allowed under section 502(f) of this title including–
> . . .
> (3) the actual, necessary **expenses**, **other than compensation and reimbursement specified in paragraph (4)** of this subsection, **incurred by**–
> . . .
> (D) **a creditor**, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in **making a substantial contribution in a case under chapter 9 or 11** of this title; . . . .

11 U.S.C. § 503(b)(3)(D) (emphasis added).  The "paragraph (4)" exclusion is precisely for the

compensation and reimbursement for an attorney or accountant of a creditor.[4]

Notwithstanding the misidentification of the legal authority for allowing an administrative

expense for a creditor's attorneys' fees, the court will presume that Creditor YP and YP Counsel are

actually seeking an order allowing an administrative expense pursuant to 11 U.S.C. § 503(b)(4),

which provides,

> (b) After notice and hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> . . .
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred

---

[4]    Though the court does not place YP Counsel in this category, the court notes that some attorneys may perceive that judicial proceedings are an opportunity for a "got ya" game in which a court will blindly grant any relief so long as there is no opposition; the United States Supreme Court has made it clear that federal judges do not issue such orders or judgments contrary to the law. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S. Ct. 1367, 1381 n.14, 176 L. Ed. 2d 158, 173 n.14 (2010); *see also Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 499 (B.A.P. 9th Cir. 2003) (citing *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1213 (9th Cir. 1994)).  Much of what YP Counsel was led to do fall into the "got ya" category, which would generally have been for the improper benefit to Debtor.

by such attorney or accountant;. . . .

Persons seeking the allowance of an administrative expense for professional fees and expenses pursuant to 11 U.S.C. § 503(b)(4) have the burden of establishing entitlement by a preponderance of the evidence and must support the application with detailed records. *See In re Hanson Industries, Inc.*, 90 B.R. 405 (Bankr. D. Minn. 1988); *In re Richton International Corp.*, 15 B.R. 854 (Bankr. S.D.N.Y. 1981); *see also In re Speeds Billiards & Games, Inc.*, 149 B.R. 434 (Bankr. E.D. Tex. 1993).

**Person Who May Request Allowance of Administrative Expense**

Starting with the "plain language" of the statute, 11 U.S.C. § 503(b)(3)(D) can be read to say that the attorneys' or accountants' costs and expenses incurred by an "entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3)" may seek to have such fees included as part of the paragraph (3) administrative expense. Thus, the person seeking to be allowed an administrative expense pursuant to 11 U.S.C. § 503(b)(4) must be an entity entitled to an administrative expense under 11 U.S.C. § 503(b)(3). The one possible identified "person" in 11 U.S.C. § 506(b)(3)(D) is a "creditor" who asserts having made a substantial contribution and is entitled to recover the attorneys' fees, costs, and expenses incurred in making a substantial contribution in advancing the Chapter 11 case. Professionals usually have to look to their client for payment, not the bankruptcy estate. *See Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986); *In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989), *order aff'd*, 1991 WL 67464 (S.D.N.Y. 1991); *In re McLean Industries, Inc.*, 88 B.R. 36 (Bankr. S.D.N.Y. 1988); *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557 (Bankr. D. Utah 1985).

The creditor need not incur any other "expenses," and the expense of attorneys' fees pursuant to 11 U.S.C. § 503(b)(4) can stand on its own for the allowable creditor's administrative expense. See *North Sports, Inc. v. Knupper (In re Wind N' Wave)*, 509 F.3d 938, 945 (9th Cir. 2007); and *Law Offices of Wake v. Sedona Institute* (*In re Sedona Institute*), 220 B.R. 74, 79 (B.A.P. 9th Cir. 1998).

The issue of whether the person seeking the allowance of the administrative expense must be the "creditor" (in this case Creditor YP) or whether the creditor's attorney may do so directly is

discussed in COLLIER ON BANKRUPTCY:

> Since section 503(b)(4) refers to the entities described in section 503(b)(3), it would appear that the right to request compensation belongs to the client and not to the professional.  Under this view, adopted in some cases, the client may request that the professional seek reimbursement on the client's behalf, but the professional may not seek an award of compensation on its own behalf.

16 COLLIER ON BANKRUPTCY ¶ 503.11[4] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.), citing *In re Olsen*, 334 B.R. 104 (S.D.N.Y. 2005) (creditor must incur the fees and only the creditor, or an attorney acting on the creditor's behalf, may apply for an administrative expense under section 503(b)(4)); *In re Glickman, Berkowitz, Levinson & Weiner*, 196 B.R. 297 (Bankr. E.D. Pa. 1996) (court expressed concern that the request was made by the professional and noted that the request should have been made on behalf of the creditor, but treated the request as being made on behalf of the creditor); and *In re Oxford Homes, Inc.*, 204 B.R. 264 (Bankr. D. Me. 1997)).  The professional is seeking reimbursement on behalf of the client, and the award only determines what portion of the client's payment obligation will be compensable from the estate as an administrative expense.  However, COLLIER further notes that this is not a universal view, stating,

> Other courts, however, have held that section 503(b)(4) allows attorneys and accountants to apply directly for payment by the estate if they represent a party specified in section 503(b)(3)(A) through (E), and have held that section 503(b)(4) does not require that fees be paid by the client before they may be recovered from the estate as an administrative expense.

COLLIER ON BANKRUPTCY, SIXTEENTH EDITION,  ¶ 503.11[4], (citing *In re R.L. Adkins Corp.*, 505 B.R. 770, 779 (Bankr. N.D. Tex. 2014); *In re Mirant, Corp.*, 354 B.R. 113, 140 (Bankr. N.D. Tex. 2006); *In re Western Asbestos Co.*, 318 B.R. 527 (Bankr. N.D. Cal. 2004) (counsel can seek reimbursement under section 503(b)(4) even if client has not paid and is not obligated to pay the fees)).

    As to the latter point, this court does not concur in a blanket proposition that there never needs to be a client who has an obligation to pay the attorneys' fees and costs for such fees that are sought to be recovered as an administrative expense pursuant to 11 U.S.C. § 503(b)(3)(D) and (b)(4).  While it may be appropriate for the attorney to agree to waive the fees for a least sophisticated consumer client (including providing *pro bono* services that work to enhance and provide greater access to the judicial process), 11 U.S.C. § 503(b)(4) was not enacted as an attorneys' fee free-for-all

provision in which sophisticated creditor clients can throw financial caution to the wind and turn attorneys loose to wreak havoc on bankruptcy cases because it is of no cost to the creditor.

As discussed in this Decision, the absence of a sophisticated creditor engaging in the normal critical discussion with its attorney of the cost and benefit of attorneys acting in the bankruptcy case has resulted in causing other parties and the court in this case to incur costs and expenses that would not have arisen if a sophisticated creditor was actually paying the bill and making sure that its legal services dollars were being effectively spent. Though a client is "missing" to incur the administrative expense and consider whether the professional fees and costs are actual, reasonable and necessary, Congress has given the final responsibility for such determination to the court.

This fee determination process is similar to the court having to make such determinations under the least sophisticated consumer fee shifting provisions under the federal Fair Debt Collection Practices Act,[5] Truth in Lending Act,[6] and Fair Credit Reporting Act.[7] 15 U.S.C. § 1692(a).[8] The determination of proper, reasonable, and necessary attorneys' (and other professionals') fees and costs is a common task for bankruptcy judges, that issue regularly and routinely arising under 11 U.S.C. § 330, as well as prevailing party fees in contested matters and adversary proceedings.

**Identification of Person Requesting Relief in Motion**

The court reads the present Motion to state that it is Creditor YP who is requesting the fees and costs as expenses, as a creditor identified in 11 U.S.C. § 503(b)(3)(D), to the extent such administrative expense is proper pursuant to 11 U.S.C. § 503(b)(4). The Motion itself states that it, YP Counsel, is appearing as the attorney for Creditor YP, not as the attorney for YP Counsel's law

---

[5]  15 U.S.C. § 1692k.

[6]  15 U.S.C. § 1640(a).

[7]  15 U.S.C. § 1692(a).

[8]  *See Giovannoni v. Bidna & Keys*, 255 F. App'x 124 (9th Cir. 2007) (discussing published decisions for proper computation of attorneys' fees when trial court reduced the requested fees by fifty percent); and Mares v Credit Bureau of Raton, 801 F.2d 1197, 1201 (10th Cir. 1986) ("In that process 'the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. . . ;'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

firm. Dckt. 843.  The actual language used in the Motion is that "Creditor YP . . . submits the first and final Application for Compensation . . . for its attorneys Coleman & Horowitt, LLP (the 'Applicant')."  *Id.*, p. 1:22–27.  The court reads this to state:

> Creditor YP files this motion for allowance of an administrative expense pursuant to 11 U.S.C. § 503(b)(4) for its attorneys' fees and expenses in making a substantial contribution to this bankruptcy case.

To read the Motion otherwise, it would be that Creditor YP is appearing as "counsel" for its own attorneys.  Creditor YP's rights, as well as YP Counsel being paid for the beneficial services rendered, should not be prejudiced by the mere use of confusing language.  Further, the Debtor, Trustee, Trustee Counsel, and other creditors should not be rewarded by this court denying YP Counsel a proper amount for reasonable attorneys' fees and costs for their nonproductive conduct and inducing YP Counsel to "learn on the job" and be misled as to how a Chapter 11 case is properly prosecuted.

**Determination of Substantial Contribution to Support Award of**
**Attorneys' Fees and Costs Pursuant to 11 U.S.C. § 503(b)(4) and (3)**

While the Bankruptcy Code does not define "substantial contribution," it provides basic factors to be considered in determining whether a substantial contribution has been made in a case, with the primary factor being the extent of the benefit to the estate. *Cellular 1010, Inc. v. Channel Communications, Inc., (In re Cellular 101, Inc.)*, 377 F.3d 1092, 1096 (9th Cir. 2004).  Other factors considered by the courts include:

A.   Whether the services were undertaken solely for the benefit of the party itself or for the benefit of all parties in the case;

B.   Whether the services were actions that would have been taken by the party on its own behalf, absent an expectation of reimbursement from the estate;

C.   Whether the party can demonstrate that its actions provided a direct, significant, and demonstrable benefit to the estate;

D.   Whether the benefit conferred upon the estate exceeds the costs sought to obtain that benefit; and

E.   Whether the actions were duplicative of those being taken by other parties in the case, such as the debtor, a trustee, or an official committee.

COLLIER ON BANKRUPTCY, SIXTEENTH EDITION, ¶ 503.10.

Creditors who have an active role in the confirmation process frequently seek substantial contribution claims. Participation alone, even in successful plan negotiations will not justify a substantial contribution award. *In re AmFin Financial Corp.*, 468 B.R. 827 (Bankr. N.D. Ohio 2012); and *In re American Plum. & Mech., Inc.*, 327 B.R. 273, 291 (Bankr. W.D. Tex. 2005). However, where creditors were essential to the plan process, courts have found substantial contribution by the creditors. *In re 1250 Oceanside Partners*, 519 B.R. 802 (Bankr. D. Haw. 2014).

## REVIEW OF CONDUCT OF PARTIES AND ATTORNEYS
## IN THIS BANKRUPTCY CASE

The court has included in Appendix "A" the review of prior rulings and the reasonable prosecution (or lack thereof) of this bankruptcy case. In Appendix A, the court reviews what it has found to be the "Dysfunctional Conduct of the Parties" that has led to a significant delay in the prosecution of this case and non-productive use of time by the parties and their attorneys. The court has placed this review in Appendix A due to its length rather then making this factual intensive, long ruling even denser.

The court's conclusion is that much of the attorneys' fees, time, and expense, including that of YP Counsel was not for reasonable, productive legal work and proceedings.

## REVIEW OF CONDUCT OF CREDITOR YP AND
## YP COUNSEL FOR THE MOTION

The court has also reviewed in detail the legal services and conduct provided by YP Counsel upon which the request for an administrative expense is based. Though long, the court does not relegate it to an appendix because it relates directly to the administrative expense allowed.

YP Counsel is stated to have first drafted and floated before the court a plan and disclosure statement on October 29, 2014. Dckts. 425 and 414. Various objections were filed. The court denied approval of the proposed disclosure statement. Civil Minutes, Dckt. 477, with the court's conclusions stated on page 18 of the Minutes. The disclosure statement was grossly inadequate, leaving out such basic information as how taxes were to be paid. The financial information was incomplete and inaccurate (whether negligently or intentionally, the court did not determine). The court's findings and conclusions for not approving the proposed disclosure statement are stated in

the Civil Minutes, Dckt. 477, which include:

A.  "For instance, the Disclosure Statement does not provide for income taxes. While YP Western Directory, LLC attempts to gloss over this by stating that the Plan payout does. The lack of this information in the Disclosure Statement is just an instance of where the Disclosure Statement fails to meet the adequate information burden."

B.  "Furthermore, the Disclosure Statement fails to make clear certain assumptions that YP Western Directory, LLC take for granted. For instance, the Disclosure Statement does not make clear that the Debtors will no longer be in the wine business."

C.  "Additionally, the Disclosure Statement fails to explicitly state the basis for the single secured claim for USFI as well as fails to explicitly show the calculation for the administrative expenses on how those amounts were calculated."

D.  "Also, the court is also concerned with which projections the Disclosure Statement is relying on and whether those projections are actually feasible."

E.  "The court is also not convinced that the Disclosure Statement does not need to account for USFI's potential 11 U.S.C. § 1111(b)(2) election. The conclusory statement by YP Western Directory, LLC that it does not need to account for the three potentially [sic] claims of USFI does not provide sufficient information as to why."

YP Counsel responded, filing an amended Chapter 11 small business plan and disclosure statement on January 23, 2015. Dckts. 490 and 491.  Approval of this disclosure statement was denied. Civil Minutes, Dckt. 522.  The court's findings were stated orally on the record.  As noted in the Civil Minutes, the disclosure statement prepared by YP Counsel "suffers from significant defects, as stated by the court on the record." *Id.*  Those defects "included [YP Counsel] misstating 'controlling' law and the amount of at least one secured claim which has been [sic] previously been determined by final order of this court." *Id.*

A year later in December 2015, Creditor YP is identified as filing an amended plan and amended disclosure statement. Dckts. 706 and 704.  The court approved the "Creditor YP" Amended Disclosure Statement. January 14, 2016 Civil Minutes, Dckt. 736.  At that time, the court addressed the impropriety of having the plan provide an administrative expense for Debtor's Counsel as part of the Plan.  The court's findings and conclusions, Dckt. 736, include  (emphasis added):

A.  "The proposed Disclosure Statement states that Debtor's Counsel will be paid $40,000.00 as an administrative expense based on Ninth Circuit case law (no citation to the Ninth Circuit authorities in the Disclosure Statement)."

B.  "The Disclosure Statement further provides that **[Creditor YP] intends to seek recovery of $15,000 for fees as a claim in this case**. It is not clear if this is being asserted as a general unsecured claim or an administrative expense for prosecuting

14

a plan in this case."

C. "The **Disclosure Statement appears to make the inaccurate representation** that the Bankruptcy Code and appellate case law provide for a Debtor's attorney to be paid an administrative expense. The Disclosure Statement fails to state what appellate case law supports the proposition that Debtor's counsel is entitled to be paid an administrative expense."

The court addressed in ruling on the motion for compensation by counsel for the debtor in possession (which counsel then continued to serve as attorney for Debtor after appointment of the Chapter 11 Trustee), making a full and final determination of all the fees and costs he could properly be allowed pursuant to 11 U.S.C. § 330. August 4, 2016 Civil Minutes, Motion for Compensation, Dckt. 830.  The court's findings and amounts allowed include the following:

A. "First, [Debtor's Counsel] seeks to be paid for 4.2 hours of time for working on a plan and disclosure statement – $1,029.00. The court denied approval of the disclosure statement and the plan never was advanced. Civil Minutes, Dckt. 258. The disclosure statement was missing basic information. While the plan and disclosure statement may have caused the court and Parties in Interest to consume (waste) time and money, it is not legal work for which value was rendered to the estate or Debtor in Possession."

B. The court allowed fees of $21,756.00 for the period of November 30, 2012, through the November 13, 2013 appointment of the Chapter 11 Trustee.  These fees were allowed by the court, though Debtor's counsel, then serving as counsel for the two debtors in possession, and the debtors in possession failed to make any positive effort to prosecute the case, and the debtors in possession failed to fulfill their basic fiduciary obligations.

Though confirming the Chapter 11 Plan, Creditor YP had to make some amendments at the confirmation hearing to address extralegal (as in not allowed under the Bankruptcy Code) provisions of the Plan that YP Counsel failed to properly address prior to confirmation.  The court's findings of fact and conclusions of law are stated in the April 7, 2016 Civil Minutes, Dckt. 777.  Some of the concerning issues addressed and findings of the court in the Civil Minutes, Dckt. 777, which relate to conduct of YP Counsel and Debtor's Counsel, include the following (emphasis added):

i. "Though this case has had a long and tortured history, including the Debtor's failure to timely prosecute this as a small business case, most creditors have 'gotten on board' and support the plan."

b. "Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass Through Certificates, Series 2007-QS2 ("DBTCA Tee"), acting through PHH Mortgage Corporation, opposes confirmation. Opposition, Dckt. 756."

c. "The Debtor, not YP Western Directory, LLC, respond to the Opposition. Response of Debtor, Dckt. 759."

This is yet another demonstration, as discussed in greater detail below, that Creditor YP, while nominally the plan proponent, was dancing to the tune of Debtor and Debtor's Counsel. Creditor YP did not even respond to an objection to confirmation of "its" plan, but abdicated to allow Debtor's Counsel to call the shots.

d. "**The Plan, as** presented by [Creditor YP] and **trumpeted by Debtor**, **provides** that the Class 1 secured claim **will not be paid any monies until at some later date when** the decision is made to sell the Debtor's residence. The **Debtor will continue to live in the residence, without any payment made to the Class 1 creditor. This might be one year or 100 years – YP Western Directory, LLC has advanced a plan which allows the Plan Administrator, the Debtor, to live in the residence as long as they want and then sell it at whatever date into the future.**"

This yet again demonstrates that Creditor YP, as a creditor, appears to be disconnected with the Plan, allowing Debtor and Debtor's Counsel to run this bankruptcy case and the plan. No credible explanation was provided as to how YP Counsel, as the attorney for Creditor YP, would ever propose a plan that allowed Debtor to live in their home without ever having to pay the creditors with claims secured by the property.

e. "This proposed treatment for a secured claim is in stark contrast as to how YP Western Directory, LLC has provided for its own claim (or purportedly its own claim - with Proof of Claim No. 11 listing California Bell Directory, a California Corporation, as the creditor, with no transfer of the claim to YP Western Directory, LLC having been filed)."

Because the Debtor does not get to vote for confirmation of a plan, there appears to be little, if any, *bona fide*, good faith reason for a creditor's plan to provide for a "never have to pay a claim" provision. Rather, it appears that Debtor has prepared and proposed a Plan that "bought off" Creditor YP by providing for its claim (dropping the objection to the objection to the claim), with Creditor YP then standing as the sham plan proponent.

f. "Debtors offered no good argument for how these serious standing issues could have been miraculously resolved with the signing of a stipulation with the very entities that Debtors disputed had any standing. This **raises serious concerns whether the contentions concerning standing by Debtor were made in good faith or consistent with the certifications under Federal Rule of Bankruptcy Procedure 9011 by Debtors and Counsel for Debtors.**"

g. The court, being directed to the California Secretary of State website, discovered that YP Western Directories, LLC was not authorized to do business in California, its

corporate status reported by the California Secretary of State as – "CANCELLED."
In addressing the above issue, the court stated:

> "Throughout this case, **[Creditor YP] has (mis-)represented that it is a creditor in this case**, purporting to be the successor of Pacific Bell Directory, a California Corporation. **Counsel for the purported party 'YP Western Directory, LLC,' upon reading the court's tentative ruling posted on April 6, 2016, appeared at the hearing on April 7, 2016, to report that YP Western Directory, LLC had not existed since December 31, 2014.** See Statement of Identity, Dckt. 771. At the hearing, **counsel for 'YP Western Directory, LLC' advised the court that other courts had been notified that YP Western Directory, LLC did not exist and had been merged through a series of entities, ending up with the latest incarnation being YP Advertising & Publishing**, LLC - but counsel had no explanation as to why no notice had been given in this case, notwithstanding counsel's knowledge of the termination of YP Western Directory, LLC."

While honest mistakes can occur, it is inconceivable that if Creditor YP was actually involved in this case, and not merely "renting" its name to Debtor to misrepresent the court that Creditor YP was involved in prosecuting a creditor's plan, YP Counsel would have repeatedly misidentified its client. If Creditor YP was actually involved in asserting its rights in this case, at least one representative of Creditor YP would have told YP Counsel that the name being stated on all the pleadings was inaccurate. This was not just in the upper left-hand corner of the caption (which arguably may be something that an attorney does not carefully review when drafting pleadings), but the name of the creditor is misstated in the body of multiple pleadings. This further demonstrates that Creditor YP was not actively engaged in the prosecution of the Plan attributed to it.

    h.    "As discussed below, it appears that the identity of the actual creditor may not have been forefront on counsel for YP Western Directory, LLC - through - YP Advertising & Publishing, LLC because **the conduct of the parties indicates that it was actual acting at the direction of the Debtors – or as the court phrased it at the hearing, 'as the Debtors' dupe.'**"

    i.    "The conduct of YP Western Directory, LLC - through - YP Advertising & Publishing, LLC and its counsel, and the Debtors and their counsel cause the court great concern. **In light of all the lawyering missteps, improper conduct, and just plain mis-lawyering**, it appears that the **conduct of the various parties and counsel may well be intentional,** not inadvertent as contended by the attorneys for these parties."

    j.    "As stated above, the original Class 1 Plan treatment was patently unconfirmable – absent the consent of the creditor. As discussed by the court at the hearing, it is quite curious that if YP Western Directory, LLC - through - YP Advertising & Publishing,

LLC was actually the plan proponent, it makes no sense that the Class 1 treatment for which the collateral was the Debtors' residence would be that the creditor gets paid whenever the Debtors, acting as Plan Administrators, decide (now or 100 years from now), while all the other creditor provisions are very specific and set distinct deadlines. **This causes the court it infer that it was actually the Debtors calling the shots, with YP Western Directory, LLC - through - YP Advertising & Publishing, LLC and its counsel serving as the undisclosed proxy/agent/dupe for Debtors.**"

k.    "**When directly asked** at the hearing for **counsel for YP Western Directory, LLC** - through - YP Advertising & Publishing, LLC and counsel for Debtors to **explain how the proposed plan treatment was consistent with the Bankruptcy Code**, neither could provide an answer.  **All they could say was** that since they now had a stipulation, **it shouldn't matter**."

l.    "A review of the files in this case shows a tortured history, one in which the conduct of the various parties is not consistent with the duties and obligations under the Bankruptcy Code."

m.    Because of a stipulation agreed to by Debtor (with YP Counsel exhibiting a "yeah, me too" level of lawyering) and another creditor, the court approved the amended plan.  Notwithstanding the conduct of the attorneys and parties, the confirmed plan provided the innocent creditors with a better outcome than converting the case to one under Chapter 7.  The innocent creditors were not to be punished due to the conduct on Debtor, Debtor's Counsel, Creditor YP, and YP Counsel, and the inaction of the Trustee and Trustee Counsel.

n.    The court, again, had to expressly address the misstatement of administrative expenses under the plan, requiring that Debtor, and Creditor YP as the nominal plan proponent, properly provide for such expenses as permitted by the Bankruptcy Code.

"The court also requires that the order confirming the plan clearly state that the 'Administrative Expenses' for which court approval is required includes all administrative expenses, not merely those under the 'Administrative Expense' heading. The Plan Proponent included the respective attorneys for the Trustee and Debtors under the 'Administrative Expense' heading, but then had separate headings for the Chapter 11 Trustee's Fees and the Plan Proponent's fees. **This inclusion in the order is necessary in light of the various parties and attorneys 'creative' reading of the Class 1 treatment and the possibility that they might well argue, 'well, the Trustee's fees and Plan Proponent's fees are under a different hearing, so by confirming the Plan judge you have already approved those – irrespective of whether they are reasonable or the requesting party is entitled to such fees.'**"

The confirmed Chapter 11 Plan expressly provides that the administrative expenses that would be requested by Debtor's Counsel, Trustee Counsel, and for Creditor YP's counsel were:

**Administrative Expenses:**

Administrative expenses will be paid from cash on hand on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet approved the fees.

Attorney for the Debtors:                    $40,000.00

| | |
|---|---|
| First Attorney for Chapter 11 Trustee<br>(not expected to file a claim): | $15,000.00 |
| Successor Attorney for Chapter 11 Trustee: | $40,000.00 |
| Accountant for Chapter 11 Trustee:<br>$6,288.50 was held back and<br>Accountant is estimating an additional $25,000.00<br>. . . | $31,288.00 |
| **Chapter 11 Trustee's Fees:**<br>Trustee's Fees | $15,000.00 |
| **Plan Proponent Fees:**<br>Plan Proponent Fees | $15,000.00 |

Confirmed Plan, Part IV, page 10 of Plan, attached to Order Confirming Plan; Dckt. 781 (emphasis in original).

In the approved Disclosure Statement, Creditor YP (to the extent that it was actually involved) expressly told creditors to rely on the information in the Disclosure Statement and plan, stating:

> Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights. If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

Disclosure Statement, p.4:12–15; Dckt. 739. The Creditor YP Disclosure Statement goes further to state:

> No representation concerning the debtors and/or the business of the debtors, other than those contained herein, have been authorized by the Plan Proponent and should not be relied upon by creditors analyzing the Plan.

*Id.*, p. 4:21–23. Finally, the additional statement as to administrative expenses in the Disclosure Statement is:

> a.) Administrative Expenses
>
> Administrative expenses are costs or expenses of administering the Debtors' Chapter 11 case which are allowed under § 507 (a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition . . . All administrative claims are subject to court approval, nothing herein constitutes or shall be deemed constituting an agreement regarding administrative claims.

19

1   *Id.*, p. 18:19–15.   After the above text is the chart disclosing to creditors the "estimated

2   administrative expenses."   While that chart lists $40,000.00 for Debtor's Counsel, $15,000.00 for

3   the original attorney for the Chapter 11 Trustee, $40,000.00 for the successor attorney for the

4   Chapter 11 Trustee, and $31,288.50 for the accountant for the Chapter 11 Trustee, no possible

5   administrative expense for Creditor YP is disclosed. *Id.*, p. 19:27.   However, in a subsequent

6   paragraph the Disclosure Statement states "**Plan Proponent estimates filing a claim** for fees in the

7   sum of $15,000.00." *Id.*, p. 20:12.   The Disclosure Statement uses the word "claim," which could

8   be construed as indicating that the fees are merely part of Creditor YP's unsecured "claim,"

9   11 U.S.C. § 502,  and not an "administrative expense," 11 U.S.C. § 503.

10
                **REQUEST TO DIVERT MONIES FROM**
                **NON-AUTHORIZED ADMINISTRATIVE EXPENSE FROM**
11              **DEBTOR'S COUNSEL TO CREDITOR YP AND YP COUNSEL**

12          In the present Motion, Creditor YP ignores the confirmed Chapter 11 Plan that "it" is

13  identified as the plan proponent in this case.[9]   That Plan expressly states that the "reasonable and

14  necessary" fees that Creditor YP will seek to have allowed are $15,000.00, to the extent that such

15  would be authorized by the court. Plan, p. 10:19–20, Dckt. 781; and Disclosure Statement, stating

16  the "claim" to be asserted, p. 20:12; Dckt. 739.   Further in the Disclosure Statement prepared by

17  YP Counsel and Creditor YP, it states, "YP, Plan Proponent, anticipates submitting fees for

18  preparing the Disclosure Statement and Plan in the sum of $15,000.00."   Disclosure Statement,

19  p. 34:3–4; *Id.*   Undisclosed in the Motion is why those fees and costs ballooned to $47,085.39—a

20  300% increase.

21          The U.S. Trustee called foul (Dckt. 862), stating that Creditor YP and YP Counsel were now

22  acting in violation of the disclosures made in the Creditor YP Disclosure Statement and the

23  confirmed Chapter 11 Plan.  The response by Creditor YP and YP Counsel did not assert a drafting

24  error or reconcile this increase over the stated terms of the Creditor YP Plan.   Instead, Creditor YP

25  and YP Counsel argued that because Debtor's Counsel could not be paid $40,000.00 as an

26  administrative expense (which were clearly not allowable as an administrative expense) and for

27

28          [9]  Plan, p. 1:21–24, Dckt. 781; Disclosure Statement, p. 2:3–9, 4:7–9, Dckt. 739.

whatever reason none of the Trustee's two attorneys are seeking the allowance of any compensation, those non-allowable administrative expense monies can just be paid over to YP Counsel.

> Plan Proponent [Creditor YP] is only seeking the excess administrative fees that were not awarded to Mark Hannon, the Debtors' attorney, and fees not requested by the Trustee's first attorney. There is no adverse effect to any creditor or the Debtors because these additional fees requested are only being re-allocated to Plan Proponent.

Response, p. 2:9–12.

Creditor YP and YP Counsel further argue that the $15,000.00 amount stated in the Disclosure Statement and Plan for YP Counsel was a "discounted amount," done to provide for payment in full of $40,000.00 to Debtor's Counsel and $55,000.000 to Trustee Counsel is not credible. When the Disclosure Statement was approved by the court, everyone involved in this case knew, as a matter of bankruptcy law, Debtor's Counsel could not be allowed an administrative expense fees for representing Debtor (the post-Chapter 11 Trustee appointment work). All of the creditors knew as of voting on the Plan that the $40,000.00 for Debtor's Counsel was a phantom, false, impermissible administrative expense.

In the Response, Creditor YP and YP Counsel go further, admitting that some, if not all, of the fees relate to services (at least those without a legal basis or incomplete) that were made to benefit Debtor:

> Here, all work performed was directly for the benefit of the Debtors and creditors. It is undisputed, had this Plan not been confirmed, there would have been virtually no funds for unsecured creditors and the Debtors would have been forced to liquidate and lose most, if not all, of their real property.

*Id.*, p. 2:19–22. This part of the Response highlights the court's concern that YP Counsel was actually acting as adjunct counsel for Debtor, being directed by Debtor's Counsel, and doing Debtor's bidding.

Any feigned ignorance of bankruptcy law (though ignorance of the law is not a defense) by YP Counsel is not credible. The U.S. Trustee filed an objection to the disclosure statement in which it cited Creditor YP and YP Counsel to the Supreme Court ruling in *Lamie v. United States Trustee*,

540 U.S. 526 (2004). January 14, 2016 Civil Minutes, Dckt. 736; December 30, 2015 comments by

U.S. Trustee, Dckt. 722.  Even a cursory reading of the Supreme Court ruling discloses:

> Adhering to conventional doctrines of statutory interpretation, we hold that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327.

*Lamie*, 540 U.S. at 537–38.

A review of COLLIER ON BANKRUPTCY, Sixteenth Ed., ¶ 330.02[2] and [3] (emphasis added)

quickly discloses those attorneys that may be allowed compensation as an administrative expense

and that it does not include the debtor's attorney:

> [2] Professional Persons
>
> [a] Requirement of Employment as a Condition of Receiving Compensation
>
> **Compensation awards for attorneys**, [and other professionals] are not limited by the maximum compensation standards applicable to trustee compensation. . . **Only** those professionals **whose employment is authorized by the court pursuant to section 327 or 1103, or who represent chapter 12 or chapter 13 debtors, are entitled to compensation under section 330.** . .
> . . .
> [3] Compensation of Attorney for Debtor
>
> [a] Compensation of Debtor's Attorney from Estate Limited by Section 330
>
> The attorney for the debtor may be compensated from the estate only as provided in section 330. In *Lamie v. United States Trustee*, the Supreme Court held that, although it might have been a "scrivener's error," **Congress deleted debtors' attorneys from eligibility for compensation from the bankruptcy estate except as specifically provided elsewhere in section 330.** Section 330(a)(4) specifically provides for compensation of debtors' attorneys in chapter 12 and chapter 13 cases from the estate, but it makes **no similar provision for debtors' attorneys in chapter 7 or in chapter 11 cases where the debtor is not a debtor in possession**.  These latter attorneys can be compensated from the estate only if they are appointed to represent the trustee, which would normally be with respect to a discrete matter for which they were particularly qualified. . .

If that readily available resource was not enough for Debtor, Debtor's Counsel, and

YP Counsel, this court addressed and rejected at the hearing for approval of the Disclosure

Statement Debtor's Counsel's arguments that the Supreme Court did not mean what it said that a

debtor's attorney could not be allowed an administrative expense for attorneys' fees for representing

the debtor.

> Counsel for Debtor has filed his Memorandum of Points and Authorities citing to bankruptcy case law (not the Bankruptcy Code) for the proposition that a debtor's attorney may be paid attorneys' fees notwithstanding the appointment of a trustee.

22

> Shepardizing the cases cited in the Points and Authorities led the court to *Lamie v. United States Trustee*, 540 U.S. 526, 538–39 which is contrary to the Debtor's citations and lists the circumstances in which a debtor's counsel may be compensated from the estate. . . .

Civil Minutes, January 14, 2016 Disclosure Statement Hearing; Dckt. 736.

This attempt to pass monies through a Chapter 11 plan to Debtor's Counsel (effectively to Debtor by paying Debtor's post-Chapter 11 Trustee obligation to Debtors' Counsel) appears to be another example of YP Counsel doing the bidding of Debtor and Debtor's Counsel–without regard to the law and the ruling of the United States Supreme Court.

Further, Creditor YP and YP Counsel are acting to breach the "contract" created by the confirmation of the "Creditor YP" Plan.

> A reorganization plan resembles a consent decree and therefore, should be construed basically as a contract. *See The Official Creditors Committee of Stratford of Texas, Inc. v. Stratford of Texas, Inc. (In re Stratford of Texas, Inc.)*, 635 F.2d 365, 368–69 (5th Cir. Unit A Jan. 1981); *see also Rufo v. Inmates of Suffolk County Jail*, 116 L. Ed. 2d 867, 112 S. Ct. 748, 757 (1992) (a consent decree has elements of both a judgment and a contract).

*Hillis Motors v. Hawaii Automobile Dealers Association (In re Hillis Motors)*, 997 F.2d 581, 588 (9th Cir. 1993). "Once a reorganization plan is confirmed, it is a new contract among the parties, who are bound by it." *Gomes v. Roman Catholic Church of the Diocese of Tucson (In re Roman Catholic Church of the Diocese of Tucson)*, No. AZ-07-1409-MkEMo, 2008 Bankr. LEXIS 4737, at *12 (B.A.P. 9th Cir. Nov. 28, 2008).

In the "contract," Creditor YP and YP Counsel affirmatively state that Creditor YP's administrative expense recovery will be $15,000, to the extent it is allowed by the court. Plan, p.10:19–20, and Order Confirming Plan, p. 2:6–7; Dckt. 781. Creditor YP and YP Counsel now seek to breach that contract by contending that because someone else does not have an administrative expense (which everyone knew was an invalid administrative expense, for which the actual expense was $0.00), Creditor YP gets to take the money.[10]

---

[10] The shifting of positions and now trying to inflate a stated $15,000.00 expense to a $45,000.00 expense also raises the specter of judicial estoppel. The equitable doctrine of judicial estoppel encompasses a variety of different situations that revolve around the concern for preserving the integrity of the judicial process. *Alary Corporation v. Sims (In re Associated*

**SUBSTANTIAL CONTRIBUTION AND VALUE TO
THE CHAPTER 11 CASE BY YP COUNSEL**

The amount of an administrative expense for the attorneys' fees of a creditor must be for a "substantial contribution" to the Chapter 11 case and must be reasonable. Even when the court finds that the services billed by an attorney are "actual," meaning that the fee application reflects actual time entries charged for services, the attorney must still demonstrate that the work performed was necessary and reasonable. *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 958 (9th Cir. 1991). An attorney must exercise good billing judgment with regard to the services provided because the court's authorization to employ an attorney to work in a bankruptcy case does not give that attorney "free reign to run up a [professional fees and expenses] without considering the maximum probable [as opposed to possible] recovery." *Id.* According to the Court

*Vintage Group, Inc.)*, 283 B.R. 283 B.R. 549, 565. (B.A.P. 9th Cir. 2002). The doctrine extends to incompatible statements and positions in different cases. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996).

Independent of unfair advantage from inconsistent positions, judicial estoppel may be imposed "[o]ut of 'general consideration of the orderly administration of justice and regard for the dignity of judicial proceedings;' or to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton*, 270 F.3d 778, 782 (9th Cir. 2001); and *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). Moreover, it may be invoked "to protect the integrity of the bankruptcy process." *Hamilton*, 270 F.3d 785.

Here, with full knowledge that no legal basis existed for there being a $40,000.00 administrative expense for Debtor's Counsel, Creditor YP continued to communicate to the court and obtain confirmation of a plan that provided for Creditor YP to have a $15,000.00 (to the extent permitted) administrative expense. Even though Creditor YP was well aware of the need for court approval, it failed to make that correction to the Plan, necessitating it having to be done at the hearing for confirmation of the Plan.

To jump from dollar amount to dollar amount, confirm a plan with a $15,000.00 administrative expense amount, and then flip-flop to more then treble that amount after the plan is confirmed is not consistent with maintaining the integrity of the judicial process. The contention that because, after confirmation of the Plan and the therefore known requirement of court approval of administrative expenses was inserted into the plan rather than the apparent "granting" of the administrative expense by the plan itself, creditors should not care that $30,000.00 of a known worthless administrative expense is diverted to Creditor YP is not credible and sounds in "fast and loose" play.

of Appeals for the Ninth Circuit, prior to working on a legal matter, the attorney, or other professional as appropriate, is obligated to consider:

> (a)    Is the burden of the probable cost of legal [or other professional] services disproportionately large in relation to the size of the estate and maximum probable recovery?

> (b)    To what extent will the estate suffer if the services are not rendered?

> (c)    To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*Id.* at 959. The standards used to allow fees and costs awarded pursuant to 11 U.S.C. § 330 apply to the award of an administrative expense pursuant to 11 U.S.C. § 503(b)(4).[11]

While there has been some benefit to the case, there has not been $45,085.39 of "substantial contribution" by Creditor YP or YP Counsel. The unreasonableness of this increased amount is highlighted by what Creditor YP and YP Counsel argue are the total "reasonable fees" for all of the attorneys listed in the Plan and Disclosure Statement. Piled on top of the current increased request of $45,085.39 of Creditor YP are the $40,000.00 of fees billed by Debtor's Counsel, $40,000.00 in fees for the Trustee's second attorney, and $15,000.00 for the Trustee first attorney. In addition, YP Counsel states that another $19,000.00 of time was spent reasonably working on this case by YP Counsel, but not included in the increased administrative expense now sought. These total $159,085.39 in legal fees for these three attorneys.

**Absence of Client for YP Counsel**

YP Counsel disclosed at the hearing on the present Motion that Creditor was not actually paying YP Counsel and had no obligation to pay YP Counsel for the work done on this bankruptcy case in its name. It is unclear how involved Creditor YP was in the reasonable prosecution of "its" rights and interests in this case and what direction, if any, it was giving YP Counsel. As noted, for an extended period of time YP Counsel continued to misidentify its client, stating it to be an entity that did not exit, that named entity having ceased to exist after being merged into another entity.

---

[11] *North Sports, Inc. v. Knupper (In re Wind N' Wave)*, 509 F.3d 938 (9th Cir. 2007); and *see* COLLIER ON BANKRUPTCY, 16TH EDITION, ¶ 503.11.

If a sophisticated client such as Creditor YP had been engaged with its counsel and actually paying the bill for the legal services, it is likely that such a sophisticated creditor would not be paying counsel to "learn on the job" and not allowing that counsel filing (and the client paying for) significantly deficient disclosure statements and plans. It is likely that such a client would have engaged an experienced bankruptcy attorney who would not rely on the information and explanation of bankruptcy law from opposing attorneys (Debtor's Counsel and Trustee Counsel).

In many respects, it appears that YP Counsel was an attorney without any active client. Instead, YP Counsel appears to be a freelance attorney, financially responsible to no one, and hoping to use 11 U.S.C. § 503(b)(4) to create a paying client where none existed. While it appears well intentioned, YP Counsel has contributed to the series of missteps in this case and has emboldened Debtor and Debtor's Counsel to take greater and greater liberties using the name of Creditor YP as its proxy.

Even after subtracting out the $19,000.00 of work that YP Counsel does not include in the present Motion and the $15,000.00 for the Trustee's first attorney, it is clear that there has not been $125,000.00 of reasonable, necessary, and proper legal work properly prosecuting this bankruptcy case and getting a plan to confirmation.

If, as Creditor YP asserts (admits as stated in the Creditor YP's Disclosure Statement and Confirmed Plan) there was $40,000.00 of reasonable and necessary time spent by Debtor's Counsel in making a substantial contribution to this case, then Creditor YP's additional contribution would be merely the icing on the cake. But it is clear from the quality of the work done and the obvious legal defects in the various plans floated in this case, there has not been $40,000.00 reasonable and necessary work done by Debtor's Counsel, nor $45,000.00 of reasonable and necessary work by YP Counsel in this case.

From the evidence presented, YP Counsel has served as the "second chair" to Debtor's Counsel, acting at his direction and on his commands. The plans filed clearly were drafted, or at least the terms dictated, by Debtor's Counsel, as demonstrated by the "Debtor never has to pay on the claim secured by Debtor's home until Debtor chooses in the future" provision. As discussed above, when the "Creditor YP's Plan" was attacked, YP Counsel did not respond, but left that to

Debtor's Counsel (the "first chair attorney" directing the show).  This even included objecting to the deposition of YP Counsel, something that Creditor YP did not act on.  Again, this demonstrated that YP Counsel was the "associate counsel" working on this matter at the direction of Debtor's Counsel.

Creditor YP has provided billing records of YP Counsel as Exhibits A-1 through A-5. Dckt. 846.  Beginning with Exhibits A-1, for the hours relating to disclosure statements and plans, the time spent during the period November 2014 through December 2015 were of little value to the case and did not provide any substantial benefit.  This was a period of non-productive cycling by Debtor and Creditor YP, with blatantly defective disclosure statements and defective plans.  Much of the billings are for disclosure statements that could not be approved and for which Creditor YP did not prevail in its efforts (but caused significant cost and expense to the other creditors).  Even for the confirmed plan, Creditor YP was required to make amendments at the confirmation hearing to correct obvious defects (which grossly favored the Debtor) that rendered the plan non-confirmable.

In looking at the billings for just drafting the disclosure statement and plan, YP Counsel includes $12,275.00 in fees on Exhibit A-1.[12]  Much of this is for plans that could not be and were not confirmed. $12,275.00 for the plan in this case is unreasonable and not warranted.  This does not include the extensive time in communications (phone and e-mail) with Debtor's Counsel and counsel for the Trustee.  While some communication is necessary, and very beneficial, the level of communication does not indicate time well spent in providing a substantial contribution to the case.

Creditor YP seeks to recover $4,362.50 relating to the litigation concerning Ian MacDonald, a creditor in this case.  That claim, in the amount of $8,135.00 is provided for as a Class 8 secured claim and for $16,270.00 as a Class 10.1 unsecured claim.  Proof of Claim No. 21 was filed by Ian MacDonald on March 28, 2013, as a $16,270.01 general unsecured claim. Proof of Claim No. 21. The $4,362.50 of "substantial benefit" work is purported to have been done after November 3, 2014.

---

[12]  The court has not been presented with Debtor's Counsel's billings and the total "legal team" time billed for these various deficient plans, disclosure statements, and pleadings.

Exhibit A-2, Dckt. 846.  The Motion and evidence do not identify what substantial benefit was provided to the case by the work done by YP Counsel.

Creditor YP seeks to recover an additional $5,362.50 for the work of YP Counsel addressing the secured claim of "USFI & G Street."  In the confirmed plan, USFI's $400,000 secured claim is provided for with $3,000 per month payments, with interest at 6% per annum for 48 months, with the entire obligation coming due in full at the end of the 48 months.

For the G Street Investments claims, its $750,000 secured claim is provided for in the confirmed plan with $4,250 per month payments, with the balance to be paid in full on August 31, 2018.  This claim was filed by LSC Realty California, LLC, and was subsequently assigned to G Street Investors, in the amount of $767,864.75, of which $650,000.00 was claimed as secured and $117,864.75 as unsecured. Proof of Claim No. 13.  The provision for payment of $750,000.00 was based on G Street Investors making an 11 U.S.C. § 1111(b) election to have its claim, as of the commencement of the bankruptcy case, treated as a fully secured claim.

Little, if any, explanation is provided as to how Creditor YP provided a substantial benefit to the case by YP Counsel's billings, especially in light of the $80,000.00 of legal fees for work done by Debtor's Counsel and Trustee Counsel.  It appears that this work was more of the "second chair work" done, duplicating what the Debtor's Counsel and Trustee Counsel were doing.

In considering the present Motion, the court was reminded of the nature and quality of the legal work in connection with these claims.  On April 2, 2015, Debtor's Counsel filed an Objection to the two claims of G Street Investments, LLC.  Objection, Dckt. 556.  In the period February 2015 through May 2015, YP Counsel billed extensively for working on this Objection, including drafting revisions to it.  The sole basis for the Objection was stated by Debtor's Counsel (and YP Counsel through its collaboration that Creditor YP seeks as part of the requested administrative expense) is for the court "to exercise its equitable powers under section 105 of the Bankruptcy Code" as:

> Debtors move this Court under its equitable powers [stated to be "under section 105 of the Bankruptcy Code"] to limit the claim of G Street Investments, LLC, to a secured sum of $495,000.00, to order that no unsecured claim exists, and that the secured sum be paid at an interest rate of 5.250% interest, amortized over 30 years, which is the sum of $3,353.00 monthly.

Objection, Dckt. 556.  In substance, Debtor (and YP Counsel through its second chair collaboration)

argued that Debtor should not pay and G Street Investments, LLC should not be paid what is legally due on the note because the note had been negotiated by the original creditor, with Mr. MacDonald purchasing the note for less than the full amount owed at the time.  It was asserted that the negotiation of the note worked a forgiveness of a portion of the debt owed by Debtor because Mr. MacDonald had represented Debtor on other matters.  No legal basis under any applicable law was cited by Debtor (and Creditor YP collaborating) for this on the Objection, except citation to one 1988 bankruptcy court decision from the Eastern District of Louisiana.[13]

The court, in ruling on the Objection after an opposed hearing by G Street Investments, LLC, held that such a contention not only violated the recent Supreme Court ruling in *Law v. Siegel*, 571 U.S. ___, 134 S. Ct. 1188 (2014), but well established law in the Ninth Circuit in *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations)*, 502 F.3d 1086 (9th Cir. 2007), which has made it abundantly clear that the court's equitable powers under 11 U.S.C. § 105 are not a grant of *carte blanche* authority for the court to ignore specific Bankruptcy Code sections, state and federal law, and rules based on a non-specific notion of "equity," with the termination of another person's rights just to be "fair," even though the law does not allow it.

As with much of the legal work done after the appointment of the Trustee, there was little benefit to anyone from such efforts and expenses imposed on all of the parties in interest and the court.

Another curious coincidence is that Debtor originally objected to the claim on Creditor YP, asserting that no such obligation was owed.  In the objection to claim, Debtor and Debtor's Counsel asserted that no evidence was attached to Creditor YP's proof of claim and that the claim was time-barred. Objection, Dckt. 91.  Presumably, neither the Debtor nor Debtor's Counsel would have filed such an objection unless they both had a good faith belief that such objection was proper on both the facts and law in light of the certifications by both pursuant to Federal Rule of Bankruptcy

---

[13]  In the cited bankruptcy court case, *In re Executive Office Centers, Inc.*, 96 B.R. 642 (Bankr. E.D. La. 1988), the court denied the debtor's request to reduce the amount of the debt owed on the note based on it having been purchased for less than the amount then owed on the note to the original creditor.

Procedure 9011.  The objection was filed on March 7, 2013.  If time barred, there is little valid response that Creditor YP could assert.

The two debtors testified under penalty of perjury that the last payment they made on the debt owed to Creditor YP was in 2008, with the 2013 bankruptcy case being filed more than four years (the statute of limitations for a debt based on a written contract) after that payment. Declaration, Dckt. 93.  Debtor further asserted that the $150,000.00 claim should be disallowed because the state court action that had been commenced by Creditor YP had been dismissed for lack of prosecution.

However, on September 12, 2013, after the hearing on the claim objection had been continued, Debtor withdrew the objection to the $150,000.00 claim. Dckt. 220.  This coincided with the hearing set for September 26, 2013, for the conversion or dismissal of this case, and created the appearance that notwithstanding a *bona fide* basis for objecting to the claim, Debtor recognized it needed an ally (or strawman) to "fight" the conversion or dismissal of the case, with the "cost" to other creditors being Debtor not objecting to the $150,000.00 claim.

**Fees Allowed Creditor YP and YP Counsel as an Administrative Expense for Substantial Contribution Provided in This Bankruptcy Case**

The court believes that it could deny the Motion in its entirety.  Creditor YP and YP Counsel, in less than good faith, seek to breach the confirmed Chapter 11 Plan and Disclosure Statement (for which Creditor YP is identified as the plan proponent) so to skim $30,000.00 of non-allowable administrative  expenses identified to Debtor's Counsel into its own pocket (or possibly divert it back to Debtor's Counsel, YP having previously agreed to seek only $15,000.00 of fees as an administrative expense).

Based on the conduct of the parties, the court is convinced and concludes that much of what YP Counsel has done that generated the ire of the court was done at the direction and bidding of Debtor's Counsel and Debtor, as well as the direction or acquiescence of the Chapter 11 Trustee and the Trustee Attorney.  Some of it represents duplicative billing to what is stated to be $40,000.00 of Debtor's Counsel's fees that Creditor YP and YP Counsel included in the Disclosure Statement and Plan.  Much of what Creditor YP and YP Counsel seek to recover is for advocating improper

30

1  legal positions for Debtor's advantage, not for substantially contributing to the case.

2      The court is further convinced, and concludes, that much of what is purported to have been
3  done by Creditor YP and YP Counsel is really work done or directed by Debtor's Counsel.
4  Reviewing the Plan and Disclosure Statement, Creditor YP's name appears on it merely because
5  Debtor had blown (due to failing to fulfill the fiduciary duties of a debtor in possession) the ability
6  to run this case after the appointment of the Chapter 11 Trustee.  Additionally, Debtor was unable
7  to propose a plan, having designated this as a small business case and then failing to propose and
8  confirm a plan within the time lines for a debtor in a small business case.  11 U.S.C. §  1121(e).

9      Though the court could deny any administrative expense for Creditor YP, the court is also
10  convinced that there has been a benefit for other creditors and some contribution, which for purposes
11  of this Motion the court will consider "substantial," having been provided by Creditor YP and
12  YP Counsel, even if acting as the dupes for Debtor and Debtor's Counsel.  If Creditor YP had not
13  been involved, the court is convinced that none of the other creditors or the Chapter 11 Trustee were
14  capable of putting together and confirming a Chapter 11 plan.  While Creditor YP's role may merely
15  have been a beard to allow Debtor's Counsel to run the show, there is a confirmed plan in this case.

16      The court also notes that denial of reasonable attorneys' fees and costs would have the
17  perverse effect of rewarding Debtor for its conduct in misleading and professionally abusing
18  YP Counsel.  Debtor is obligated under the Plan to pay the reasonable administrative expense for
19  Creditor YP's legal fees and costs pursuant to 11 U.S.C. § 503(b)(4).  This is in addition to funding
20  the payments required under the Plan.  Debtor will not be rewarded for Debtor's misconduct.

21
**Allowance of Administrative Expense for $25,375.00 in**
22  **Legal Fees and $1,061.19 in Costs**

23      As to the amount of the administrative expense, Creditor YP has stated and obtained votes
24  of creditors and the confirmation of the Chapter 11 Plan by the court stating that the fees for this
25  administrative expense were $15,000.00 (to the extent permitted by the court).  Creditor YP admits
26  that the Debtor's Counsel and Trustee have done $80,000.00 of legal work in this case.  Thus,
27  Creditor YP's efforts could likely be less than the $15,000.00, as there has not been $95,000.00 of
28  good, solid, legal work in this case.

The court concludes that the reasonable value of the legal services provided by YP Counsel in this case that constitute a substantial contribution to the case is $25,375.00. It may be that the benefit to Creditor YP for work of YP Counsel is in excess of this amount (such as getting the Debtor to allow Creditor YP a $150,000.00 claim instead of prosecuting what Debtor's Counsel has represented is a *bona fide*, good faith, valid claim objection) is $25,375.00. While this is more than the $15,000.00 stated in the Disclosure Statement and the Plan, on the totality of the circumstances, the work done, and the results achieved, this is a reasonable amount of fees for a creditor to recover for legal fees pursuant to 11 U.S.C. § 503(a)(4). The same would be true if the applicant were the attorney for a trustee or debtor in possession and had achieved such results. Creditor YP and YP Counsel are not punished, nor are they rewarded, with more or less in reasonable and necessary legal fees.

For the work done and experience demonstrated, a $250.00 per hour billing rate is not reasonable. The admission by Creditor YP that the $19,000.00+ of legal research billings did not substantially contribute to the case is consistent with the court's determination of the value of the legal services provided by YP Counsel. It appears that much of this was the "law school training" for YP Counsel's on bankruptcy. Given the level of legal representation and the "second chair" nature of the services, a $175.00 hourly rate would not be inappropriate. At that rate, $25,375.00 allows Creditor YP to recover 145 hours of billable time[14] for substantial value to the estate, which is reasonable for the legal work done and "substantial benefit" realized in this case.[15]

The court recognizes, as the U.S. Trustee has properly raised, that the Disclosure Statement and Plan stated the expenses at $15,000.00. However, that was an "approximate" amount, with the

---

[14] Even if the court were to use the $250.00 an hour rate, this allows for 101.50 hours for drafting plans and disclosure statements, getting a disclosure statement approved, and then getting the plan confirmed. This is more than sufficient for an attorney with a $250.00 an hour billing rate for the plan in this case.

[15] The court notes that the value of YP Counsel services may be greater to Creditor YP in light of having a $150,000.00 claim in this case that Debtor now has to pay, notwithstanding what Debtor and Debtor's counsel assert they have a *bona fide* objection. While not a "substantial contribution" to the case, Creditor YP has benefitted greatly and may well want to compensate YP Counsel for achieving this creditor specific victory.

court concluding that $25,375.00 is within such "approximation" given the facts of this case. In making this award, the court believes it consistent with the U.S. Trustee's Opposition and the spirit of the Bankruptcy Code to allow creditors substantially contributing to a plan to recover the related expenses commensurate with the value of such substantial contribution. The court does not read the U.S. Trustee Opposition to be that the Debtor should be paid monies that otherwise would be reasonably due Creditor YP pursuant to 11 U.S.C. § 503(b)(4), especially in light of the conduct of the Debtor and Debtor's Counsel contributing to YP Counsel's problems. Additionally, the confirmed Chapter 11 Plan provides for creditors holding general unsecured claims to receive a 50% dividend, so the payment of the $25,375.00 in fees for the administrative expense will not diminish that distribution.

Further, the payment of $25,375.00 in fees will not impair Debtor's ability to perform the Plan. Debtor was planning on paying $95,000.00 in attorneys fees for Debtor's Counsel and Trustee's Counsel, of which only $21,756.00 has been approved by the court for Debtor's Counsel, for his services as counsel for the debtors in possession, and no fees approved for (and no application made by) Trustee Counsel. The payment of approximately $10,000.00 more for YP Counsel fees is dwarfed by the $73,244.00 in "savings" (which inures to the benefit of Debtor) from fees not approved by the court.

**Costs and Expenses**

Creditor YP also seeks the allowance and recovery of costs and expenses in the amount of $1,280.39 pursuant to this Motion.

The costs requested in this Motion are,

| Description of Cost | Per Item Cost, If Applicable | Cost |
|---|---|---|
| Postage | | $315.47 |
| Photocopies | | $642.60 |
| Mileage | | $103.12 |
| Court Calls | | $219.20 |
| Total Costs Requested in Application | | $1,280.39 |

33

The court allows all but the $219.20 CourtCall expense. These items are out of pocket costs for Creditor YP and YP Counsel in providing the representation. The court does not allow the CourtCall expense in that it represents one of the "values" provided by the lawyer within the hourly rate. The use of the CourtCall telephonic appearance service, and this court not requiring in-court appearances for every hearing, allows an attorney to greatly expand the geographic area in which he or she can economically appear. In addition, while waiting on CourtCall for a matter to be called, the attorney can be sitting at his or her desk working on another matter. Given the nature of reasonable billing, the use of CourtCall may raise the attorneys' effective hourly rate 150% to 200%. As opposed to being an "expense," the use of CourtCall is effectively (when properly used) a tool to make the practice of law more efficient, more competitive, and more profitable.

The court allows costs and expenses in the amount of $1,061.19.

The court allows YP Advertising & Publishing, LLC an administrative expense pursuant to 11 U.S.C. § 503(b)(4) for its legal costs and expenses, which provided a substantial contribution to the case as provided in 11 U.S.C. § 503(b)(3)(D) of $26,436.19. The Plan Administrator under the confirmed Chapter 11 Plan shall pay these expenses as provided in that Plan.

Dated: December 14, 2016

By the Court

Ronald H. Sargis, Judge
United States Bankruptcy Court

34

**APPENDIX A**

**DYSFUNCTIONAL CONDUCT OF PARTIES**

This bankruptcy case stands out as one in which the parties and their attorney did not comport themselves in the manner one expects in court, whether state or federal.  The court's findings and conclusions stated in the civil minutes from various hearings and status conferences demonstrate the dysfunction, and waste of legal time and money, by the parties.  These include the following:

I.     September 26, 2013 Civil Minutes, Motion to Convert or Dismiss Case Filed by U.S. Trustee, Dckt. 254 (emphasis added).

   A.     "The U.S. Trustee and creditors are correct in asserting that **the Monthly Operating Reports** filed in this case are so inconsistent and inadequate that they **expose the inability of the Debtors in Possession to fulfill their fiduciary duties**."

   B.     "The court in independently reviewing the Monthly Operating Reports is struck by inconsistencies between the reported income, reported expenses, and bank account balances."

   C.     "The court determines that the appointment of a Chapter 11 Trustee is the preferred course. Several creditors expressed a desire that further effort be made to confirm a plan. It appears that the Debtor's business and assets are capable of generating a significant cash flow, which may be able to fund a plan."

   D.     "It is clear that the **Debtors are not capable of proceeding in this case** without someone else in control of the assets of the estate."

II.    November 25, 2014 Civil Minutes, Motion to Compel Filed By Former non-bankruptcy attorney for Debtor, Dckt. 453 (emphasis added).

   A.     "The court has been presented with an emergency motion for an order compelling the attendance of the person most knowledgeable at [Creditor YP], the creditor proponent of the proposed Chapter 11 Plan in this case and [YP Counsel], its attorney, to appear for Depositions."

   B.     "**Though they are not the subject of the discovery sought concerning** [Creditor YP's] creditor plan, the **Debtors have rushed in with a response on behalf of [Creditor YP]**. Dckt. 445. Debtors state that in their list of creditors are four attorneys who have previously represented the Debtors. The Debtors note that only the attorney who represents [Creditor YP] has not represented the Debtors. The Debtors do not point out the significance of [Creditor YP's] attorney not having represented the Debtors and not being a creditor of the Debtors."

   C.     "Though **Debtors argue that [YP Counsel] knows nothing about the information in the disclosure statement**, they then assert that the disclosure statement was prepared jointly by Debtors counsel and [YP Counsel]. In light of the requirements of Federal Rule of Bankruptcy Procedure 9011, since [YP Counsel] participated in

the preparing of the disclosure statement, then she has specific obligations and duties relating to the information stated therein."

D.    "Finally, Debtors, on behalf of [Creditor YP], request that the court deny the Motion. **Debtors provide no basis for having standing to defend [Creditor YP]** from Mr. Macdonald's attempts to conduct discovery of the plan proponent. The Response and seeking to defend [Creditor YP] appears to be **pregnant with the implication that the Debtors are controlling, or having [Creditor YP] act merely as the Debtors agent or proxy**, in proposing the Chapter 11 plan now before the court."

The court notes that as shown by the pleadings and rulings in this case, at many times it appears that Debtor's Counsel was the one actually doing the work for Creditor YP, with Creditor YP merely providing the cover of its name and YP Counsel named as the "sham party."

III.    March 26, 2015 Civil Minutes, Objection to Claim, Dckt. 551 (emphasis added).

A.    "This 'small business' Chapter 11 case was filed on November 30, 2012. Now, **twenty-nine months later neither debtor, Chapter 11 Trustee, or creditors have been able to obtain approval of a disclosure statement or confirm a plan**. Rather than converting the case to one under Chapter 7 or dismissing it in 2013 as requested by the U.S. Trustee (Motion, Dckt. 198), the court ordered the appointment of a Chapter 11 trustee."

B.    "Determining that relief [appointment of a trustee] was proper, the court made extensive findings concerning the conduct of the then Debtors in Possession. Civil Minutes, Dckt. 254."

C.    "The Chapter 11 Trustee was appointed on November 14, **2013. In the seventeenth months since his [the Chapter 11 Trustee's] appointment he has not proposed a plan.**"

D.    "The only plans proposed has been those of either the Debtors or [Creditor YP] (as a creditor) in conjunction with the Debtors. (While Debtors' counsel's name is not on the [Creditor YP] pleadings, **it is clear that he and the Debtors are working closely with and directing much of what is being done by this creditor.**)"

IV.    April 16, 2015 Civil Minutes, Motion for Relief From Stay, Dckt. 580 (emphasis added).

A.    "This case presents the court with an interesting dilemma. The court has valued Movant's secured claim at $650,000.00 in this Chapter 11 case pursuant to 11 U.S.C. § 506(a)."

B.    "However, **Debtor was unable to prosecute a plan in this small business case**."

C.    "**Creditors in this case have been unable to prosecute a plan.**"

D.    "The **Chapter 11 Trustee (order appointing filed on November 14, 2013, Dckt. 274) has been unable to prosecute a plan in this case**."

E.    "If true, it further appears that the Debtor in Possession and Trustee have allowed Movant and Movant's predecessor to take property of the estate, rents from the property, without court order or authorization."

F.   Grounds for relief from the stay exist, "the **Debtors, other Creditors, and the Chapter 11 Trustee have failed to prosecute an effective plan of reorganization in this case**...."

V.   September 3, 2016 Civil Minutes, Motion for Authorization to Turn Over Monies, Dckt. 677

(emphasis added).

A.   "The court cannot, and will not, issue orders merely because it is instructed to by a trustee, debtor in possession, debtor, or attorney. **Here, no basis was shown for the court issuing the Trustee a comfort order** saying to pay the rent monies to the creditor and pay the expenses incurred in the estate operating the property."

B.   "The court's review of the July 2015 Monthly Operating Report discloses that the rents being generated by the property are only $4,758 a month. Dckt. 663, pg. 4. However, **the financial information provided under penalty of perjury of the Trustee is questionable**, as the Statement of Cash Receipts and Disbursements purports to state that the Trustee had no monthly disbursements for any expenses relating to this rental property and the tenants. But on page 6 of the July 2015 Monthly Operating Report the Trustee states that he had expenses of $851 for repairs, $1,999 for utilities, $540 for landscaping, all of which appear to be (at least in part) expenses relating to the rental of the property."

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked **XXXX**, via the U.S. mail.

| Plan Administrators/Debtors | Attorney for the Plan Administrators/Debtors |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Attn: Jason Blumberg, Esq.<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Estela O. Pino, Esq.<br>800 Howe Avenue, Ste. 420<br>Sacramento, CA 95825 | Gregory M. Salvato, Esq.<br>355 South Grand Avenue, Ste. 2450<br>Los Angeles, CA 90071 |
| Sheryl D. Noel, Esq.<br>Coleman & Horowitt, LLP<br>499 W Shaw, #116<br>Fresno, CA 93704 | Gregory S. Day, Esq.<br>Law Offices of Gregory Day<br>120 Birmingham Drive, Ste. 200<br>Cardiff-by-the Sea, CA 92007 |
| David M. Wiseblood, Esq.<br>601 Montgomery Street, Ste. 2000<br>San Francisco, CA 94111 | Matthew R. Clark, Esq.<br>Aldridge Pite, LLP<br>4375 Jutland Drive, #200<br>P.O. Box 17933<br>San Diego, CA 92177-0933 |
| Iain A. MacDonald, Esq.<br>221 Sansome Street, Third Flr.<br>San Francisco, CA 94104 | |